**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| HARLEY MISCUK | : | |
| | : | |
| Appellant | : | No. 458 WDA 2023 |

Appeal from the Judgment of Sentence Entered October 17, 2022
In the Court of Common Pleas of Beaver County Criminal Division at
No(s): CP-04-CR-0001937-2021,
CP-04-CR-0001938-2021

BEFORE: DUBOW, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.: **FILED: February 21, 2024**

Harley Miscuk (Appellant) appeals from the judgment of sentence imposed after a jury convicted him of possession with intent to deliver a controlled substance (PWID), possession of a controlled substance, possession of drug paraphernalia, fleeing or attempting to elude a police officer, and recklessly endangering another person;[1] and the trial court convicted him of driving under the influence of alcohol–general impairment, reckless driving, driving while operating privilege is suspended or revoked, and possession of a small amount of marijuana.[2] We affirm.

---

[1] 35 P.S. §§ 780-113(a)(30), 780-113(a)(16), 780-113(a)(32); 75 Pa.C.S.A. § 3733(a); 18 Pa.C.S.A. § 2705.

[2] 75 Pa.C.S.A. §§ 3802(a)(1), 3736(a), 1543(a); 35 P.S. § 780-113(a)(31).

The trial court competently summarized the trial evidence in its opinion:

Sergeant Steven Roberts and Officer Andrew Golletti of the Aliquippa Police Department testified that, on August 26, 2021[,] between 11:00 p.m. and midnight, they and other officers were at the intersection of Wade Street and Burton Street in Aliquippa investigating a crime scene involving a vehicle that had been [struck with gunfire,] when they heard five or six gunshots fired nearby. [N.T., 8/30/22,] at 27-29, 63-64. They then saw a red pickup truck coming up Burton Street towards them at a high rate of speed. *Id.* at 29-30, 63-67. Sgt. Roberts tried to [signal] the truck to stop but it did not stop[,] and he had to jump out of the way to avoid being hit, with the truck coming within two feet of him. *Id.* at 30, 64-67. The truck then went up onto the sidewalk to get around a police vehicle that was parked on Burton Street. *Id.* Sgt. Roberts and Officer [] Golletti each got into their [respective] police vehicles and pursued the truck, which continued to travel at a high rate of speed, running through numerous stop signs and red [traffic] lights. *Id.* at 31-32, 67-72. The speed limit on the residential streets involved was 15, 25, and 40 miles per hour, but the officers had to go between 50 and 75 miles per hour to catch up to the truck. *Id.* at 32-33, 69-70. There were other cars, pedestrians, and bicyclists present [in] the area at the time. *Id.* at 70. The pursuit continued for approximately two miles from Wade Street to several other streets and finally ended on Sheffield Avenue, where a Pennsylvania State Constable's vehicle was blocking the road and Sgt. Roberts's and Officer Golletti's vehicles pulled to the side of and behind the truck, boxing it in. *Id.* at 33-34, 67-72.

[Appellant] was the driver and only occupant of the truck. *Id.* at 35, 73. [Appellant] did not comply with police commands to show his hands or exit the truck and the officers had to physically remove him from the truck. *Id.* at 34-35, 72-73. Officer Golletti smelled the strong odor of an alcoholic beverage coming from [Appellant's] mouth and Sgt. Roberts observed an open can of beer in his center console and a ballistic vest in the backseat, and smelled the odor of marijuana in the truck. *Id.* at 36-38, 74, 83. The officers could not perform field sobriety tests because [Appellant] was angry, combative, and noncompliant. *Id.* at 39, 75-76. [Appellant] said something about having been shot at, but ultimately did not want to talk to the police about it. *Id.* at 35, 76-78. He also refused to consent to a blood test after having been read the DL-26 [PennDOT chemical test warnings]

form, with [Appellant] communicating his refusal by saying "Fuck you." *Id.* at 79-82.

The truck was towed and [] later found to be registered to [Appellant's] uncle. *Id.* at 83-84, 93-94. After Officer Golletti obtained a search warrant, he searched the truck and recovered a ballistic vest, two baggies of marijuana, … about fifty empty plastic baggies, a digital scale, and a cell phone. *Id.* at 84-93, 118-20. He also found a duffle bag that contained a grocery bag full of loose[,] white powder that later tested positive as cocaine. *Id.* at 93-98, 108-13. Officer Golletti testified that he had never before encountered such a large quantity of white powder in one vehicle. *Id.* at 161. The two bags of marijuana were unofficially weighed at 8.36 and 13.02 grams. *Id.* at 98-99. Officer Golletti contacted [Appellant's] uncle, who indicated that he had no intention of retrieving the truck. *Id.* at 161-62.

Warden William Schouppe of the Beaver County Jail testified that, on December 2, 2021, [Appellant] sent a text message using an inmate communication system stating: "The cops found vitamins in my uncle[']s truck that were mine and lied and said the vitamins tested positive for cocaine…[.] I have to wait for lab results that prove it[']s not drugs which can take up to 9 months if they want to be dicks[.]" *Id.* at 169-72.

Alyshia Meyers, a drug analyst with the Pennsylvania State Police Greensburg Regional Lab, was qualified to testify as an expert in the field of chemistry and analysis of [] narcotics. *Id.* at 177-82. She testified that, on June 2, 2022, Detective Bonnie Sedlacek of the Beaver County Detective Bureau submitted for testing a knotted grocery bag containing white powder. *Id.* at 188-89. Ms. Meyers tested the white powder, which tested positive as cocaine and weighed 56.3 grams. *Id.* at 189-90. Ms. Meyers used generally accepted scientific methods and rendered her opinions with[in] a reasonable degree of scientific certainty. *Id.* at 185-87, 192.

Detective Sergeant Aldo Legge of the Center Township Police Department was qualified to testify as an expert in the field of illegal narcotics and methods used by drug traffickers in the sale and distribution of controlled substances. [N.T., 8/31/22,] at 5-11. He testified that cocaine is sold on the street for about $100 per gram and that heavy users might use two or three grams in a day. *Id.* at 13-15. In Det. Legge's experience, the 56.3 grams

of cocaine recovered from [Appellant's] truck was a large bulk amount [that was not] consistent [] with personal use but [rather,] with sale. *Id.* at 17-19, 23. He also testified that drug dealers typically package drugs in plastic baggies and use digital scales to weigh their products, and the … fifty empty baggies and the digital scale found in [Appellant's] truck were also consistent with the sale of drugs rather than personal use. *Id.* at 15, 19-20, 23.

When the Commonwealth rested its case, [Appellant's] counsel made a motion for judgment of acquittal, arguing[, *inter alia*,] that … there was insufficient evidence that [Appellant] possessed the drugs or paraphernalia because the truck was owned by [Appellant's] uncle. *Id.* at 34-35. The court denied the motion. [*Id.* at 38.]

Trial Court Opinion, 6/9/23, at 2-5 (some capitalization modified).

After the denial of his motion for judgment of acquittal, Appellant testified in his own defense. *See* N.T., 8/31/22, at 46-106. Appellant emphasized that his uncle owned the truck in question. *Id.* at 65. Appellant responded to defense counsel's question about "the contents of the vehicle" by stating, "I don't know what [Appellant's uncle] does with his vehicle." *Id.* at 65-66. After the close of evidence, the jury found Appellant guilty of all counts.[3]

---

[3] As we discuss further below, the trial court instructed the jury regarding the possessory offenses against Appellant (*i.e.*, PWID, possession of a controlled substance, possession of drug paraphernalia, and possession of a small amount of marijuana – collectively, "the possessory offenses"). *See* N.T., 8/31/22, at 146-56. These instructions included the law on possession, as well as the *mens rea* required for a conviction of PWID. *Id.* at 146-47, 151-53.

On October 17, 2022, the trial court imposed an aggregate sentence of 30 to 60 months in prison. Appellant filed a handwritten, *pro se* post-sentence motion (PSM) ten days later.[4] Counsel filed an amended PSM on November 16, 2022, claiming that the trial court abused its discretion in denying Appellant's motion for judgment of acquittal. PSM, 11/16/22, ¶ 6, I. The trial court denied the PSM on March 14, 2023. This timely appeal followed.[5] Appellant and the trial court have complied with Pa.R.A.P. 1925.

---

[4] The trial court rejected Appellant's PSM and forwarded it to his appointed counsel (Counsel). *See Commonwealth v. Nischan*, 928 A.2d 349, 355 (Pa. Super. 2007) (holding that the *pro se* post-sentence motion filed by the counseled defendant "was a nullity, having no legal effect.") (citing *Commonwealth v. Piscanio*, 608 A.2d 1027, 1029 n.3 (Pa. 1992)).

[5] Counsel filed the notice of appeal on April 13, 2023, more than 30 days after entry of Appellant's judgment of sentence. However, the trial court had previously granted Counsel a 30-day extension in which to file a PSM, upon Counsel's petition (which she had filed within the ten-day post-sentence motion period of Pa.R.Crim.P. 720(A)(1) (mandating that "a written post-sentence motion shall be filed no later than 10 days after imposition of sentence.")). Thus, this appeal is timely. *See Commonwealth v. Horst*, 481 A.2d 677, 677-78 (Pa. Super. 1984) (holding a defendant may toll the time in which to file an appeal where the defendant requests an extension of time in which to file a post-sentence motion, within ten days of the judgment of sentence).

We further note that Appellant's single notice of appeal listed two trial court docket numbers, implicating *Commonwealth v. Walker*, 185 A.3d 969, 971 (Pa. 2018) (requiring appellants to file separate notices of appeal from single orders that resolve issues on more than one docket) (overruled in part by *Commonwealth v. Young*, 265 A.3d 462, 477 (Pa. 2021) (holding that "where a timely appeal is erroneously filed at only one docket, [Pa.R.A.P.] 902 permits the appellate court, in its discretion, to allow correction of the error, where appropriate.")). Nevertheless, we conclude that Appellant did not violate *Walker*, based on a breakdown in the trial court.
*(Footnote Continued Next Page)*

Appellant presents a single issue for review:

> The Trial Court erred by not granting Appellant's motion for judgement [*sic*] of acquittal, at the conclusion of the Commonwealth's case, on the basis that there was insufficient evidence to support all the charges.

Appellant's Brief at 8.

"A defendant may challenge the sufficiency of the evidence to sustain a conviction … in … a motion for judgment of acquittal at the close of the Commonwealth's case-in-chief[.]" Pa.R.Crim.P. 606(A)(1).

> The test for ruling upon a motion for judgment of acquittal is whether the prosecution's evidence, and all inferences arising therefrom, considered in the light most favorable to the prosecution are insufficient to prove beyond a reasonable doubt that the accused is guilty of the crimes charged.

***Commonwealth v. Powanda***, 304 A.3d 1284, 1288 (Pa. Super. 2023) (citations, quotation marks, and brackets omitted); ***see also Commonwealth v. Sunealitis***, 153 A.3d 414, 420 (Pa. Super. 2016) ("A

---

In ***Commonwealth v. Stansbury***, 219 A.3d 157 (Pa. Super. 2019), the Post-Conviction Relief Act ("PCRA," ***see*** 42 Pa.C.S.A. §§ 9541-9546), court had advised the appellant that he could appeal the dismissal of his petition by filing "**a** notice of appeal." ***Stansbury***, 219 A.3d at 160 (emphasis added). This Court held the trial court's misstatement constituted a breakdown of the PCRA court's operation, "such that we may overlook the defective nature of [a]ppellant's timely notice of appeal rather than quash pursuant to ***Walker***." ***Id.***; ***see also Commonwealth v. Larkin***, 235 A.3d 350, 352-54 (Pa. Super. 2020) (*en banc*) (reaffirming ***Stansbury***). Instantly, pursuant to ***Stansbury***, we may overlook Appellant's defective notice of appeal, as the trial court's order denying Appellant's PSM required the filing of "**an** appeal within thirty (30) days." Order, 3/14/23 (emphasis added).

motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." (citation omitted)).

A challenge to the sufficiency of the evidence "presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Packer***, 168 A.3d 161, 166 (Pa. 2017).

> In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all reasonable inferences drawn from that evidence, when viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to enable the fact finder to conclude that the Commonwealth established all of the elements of the offense beyond a reasonable doubt. The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Further, the trier of fact is free to believe all, part, or none of the evidence.

***Sunealitis***, 153 A.3d at 419 (citation omitted); ***see also Commonwealth v. Lake***, 281 A.3d 341, 346 (Pa. Super. 2022) ("Any doubt about the defendant's guilt is to be resolved by the fact-finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." (citation omitted)).

Instantly, Appellant claims the trial court abused its discretion in denying his motion for judgment of acquittal, as the evidence was insufficient

to convict him of the possessory offenses.[6]  *See* Appellant's Brief at 15-21.

Appellant emphasizes that he did not own the truck in which police discovered

the contraband.  *Id.* at 18-20; *see also id.* at 21 (claiming "[t]here is a

realistic plausibility that the narcotics belonged to the owner of the vehicle,"

Appellant's uncle).  According to Appellant,

> while driving the vehicle, [he] did not control or intend to control
> the narcotics in the center console or back seat of his uncle's
> vehicle.  Looking at the totality of the circumstances, there is no
> information to prove that the [A]ppellant knew the narcotics were
> in there.

*Id.* at 19; *see also id.* at 20 ("There is no information concerning the period

that [Appellant] had received the vehicle, if he had permission to use the

vehicle, or if he knew what was inside the vehicle.").

The Commonwealth counters that the trial court properly denied

judgment of acquittal, and the evidence was sufficient to convict Appellant of

the possessory offenses.  *See* Commonwealth Brief at 5-14.  According to the

Commonwealth,

> [i]t has never been a requirement that to prove possession … [of]
> narcotics found in a vehicle[,] the Commonwealth must prove that
> the vehicle actually belonged to or was registered to the individual
> charged.  *See*, *e.g.*, *Commonwealth v. Jones*, 874 A.2d 108,
> 122 (Pa. Super. 2005) (finding the evidence was sufficient [to
> sustain appellant's conviction of PWID, where he] was the
> operator of a rental vehicle, the named lessee was not in the

---

[6] Appellant states that his "argument will only address the convictions related
to [his possession of] the narcotics and drug paraphernalia.  The [A]ppellant's
claims associated with the other offenses are withdrawn."  Appellant's Brief at
15.

vehicle, and drugs were found in a grocery bag under the passenger seat where appellant's girlfriend was seated).

*Id.* at 8-9 (citation modified); *see also id.* at 10 ("Appellant hangs his hat on exactly one fact: that he was not the registered owner of the vehicle."). The Commonwealth claims that it presented sufficient evidence for the fact-finder to properly find that Appellant constructively possessed the contraband, where he

was the sole occupant of the vehicle at the time of the stop. There were no other individuals but himself who had the ability to exercise control over the narcotics. The items were all within his immediate reach and control inside the vehicle. And, Appellant then made a statement [through the inmate communication system] claiming ownership of the cocaine found inside of his gym bag in the backseat of the truck.

*Id.* at 4.

The statute governing PWID, 35 P.S. § 780-113(a)(30), prohibits "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act…." *Id.* With respect to possession of a controlled substance, the Commonwealth was required to prove Appellant "[k]nowingly or intentionally possess[ed] a controlled or counterfeit substance by a person not registered under this act…." *Id.* § 780-113(a)(16). Possession of drug paraphernalia prohibits "[t]he use of, or possession with intent to use, drug paraphernalia for the purpose of … introducing into the human body a controlled substance in violation of this act." *Id.* § 780-113(a)(32). Finally, 35 P.S. § 780-113(a)(31) prohibits

(i) the possession of a small amount of marihuana only for personal use; (ii) the possession of a small amount of marihuana with the intent to distribute it but not to sell it; or (iii) the distribution of a small amount of marihuana but not for sale.

*Id.*

"When contraband is not found on the defendant's person, the Commonwealth must establish constructive possession…." *Jones*, 874 A.2d at 121 (citation omitted). This Court has explained,

> [c]onstructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. … We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. … To aid application, we have held that constructive possession may be established by the totality of the circumstances.

*Commonwealth v. Cruz*, 21 A.3d 1247, 1253 (Pa. Super. 2011) (citation and quotation marks omitted); *see also Commonwealth v. Johnson*, 26 A.3d 1078, 1094 (Pa. 2011) (stating that "circumstantial evidence may be used to establish constructive possession of the [contraband]."). However, a defendant's mere presence at the scene does not establish constructive possession. *Commonwealth v. Vargas*, 108 A.3d 858, 869 (Pa. Super. 2014) (*en banc*); *see also Commonwealth v. Parrish*, 191 A.3d 31, 37 (Pa. Super. 2018) (stating that the location and proximity of an actor to the contraband alone is not conclusive of guilt).

With respect to PWID, we have stated that to sustain a conviction, "the Commonwealth must establish the defendant knowingly or intentionally

possessed a controlled substance without being properly registered to do so, with the intent to manufacture, distribute, or deliver it." ***Commonwealth v. Dix***, 207 A.3d 383, 390 (Pa. Super. 2019).

> The trier of fact may infer that the defendant intended to deliver a controlled substance from an examination of the facts and circumstances surrounding the case. Factors to consider in determining whether the drugs were possessed with the intent to deliver include the particular method of packaging, the form of the drug, and the behavior of the defendant.

***Jones***, 874 A.2d at 121 (citation omitted). "Thus, possession with intent to deliver can be inferred from the quantity of the drugs possessed and other surrounding circumstances[.]" ***Id.*** (citation omitted).

In its opinion, the trial court determined it properly denied Appellant's motion for judgment of acquittal, as the evidence established all elements of the possessory offenses. ***See*** Trial Court Opinion, 6/9/23, at 6-9, 11. The trial court cogently reasoned as follows:

**[PWID] and possession of cocaine**

\* \* \*

> [The trial] evidence showed that a grocery bag containing 56.3 grams of cocaine was found in the backseat of the truck, of which [Appellant] was the driver and **only occupant. The cocaine was within his reach and, though the truck was owned by his uncle, [Appellant] was in possession of the truck and was the only person with the power to exercise control over the cocaine.** Moreover, in his December 2, 2021[,] inmate text message [detailed above, Appellant] referred to the alleged cocaine by saying "The cops found vitamins in my uncle[']s truck **that were mine**..." [N.T., 8/30/22, at 171] (emphasis added). While [Appellant] may have disputed whether the white powder was in fact cocaine, the Pennsylvania State Police's drug analyst tested it and testified that it was cocaine. Taking the

- 11 -

evidence in the light most favorable to the Commonwealth, there was sufficient evidence to support a conclusion that [Appellant] possessed the cocaine.

As for intent to deliver, "[i]t is well settled that all the facts and circumstances surrounding possession are relevant in making a determination of whether contraband was possessed with the intent to deliver." ***Commonwealth v. Ramos***, 573 A.2d 1027, 1032 (Pa. Super. 1990). Factors in this analysis may include "the quantity of drugs possessed" and "the presence of drug paraphernalia." ***Commonwealth v. Parsons***, 570 A.2d 1328, 1335 (Pa. Super. 1990). "[T]he intent to deliver may be inferred from possession of a large quantity of controlled substance." ***Commonwealth v. Bostick***, 958 A.2d 543, 560 (Pa. Super. 2008) [(citation omitted)]. Here, **the quantity of cocaine was very large, and the digital scale and fifty empty baggies were sale-related paraphernalia that further bolster the case for [Appellant's possession of the contraband with] intent to deliver**. This evidence, coupled with the expert opinion offered by Det. Legge[, detailed *supra*], was sufficient to support a finding [that Appellant] possess[ed the contraband] with intent to deliver.

**Possession of [a small amount of] marijuana**

[Appellant] was charged with possession of marijuana under 35 P.S. § 780-113(a)(31)[, detailed *supra*]…. A small amount is defined as "thirty (grams) of marihuana." [***Id.***] Here, two bags of marijuana, unofficially weighed at 8.36 and 13.02 grams, were found in the center console of the truck solely occupied by [Appellant], and Sgt. Roberts smelled the odor of marijuana. These facts were sufficient to support the charge of possession of a small amount of marijuana.

**Possession of drug paraphernalia**

[Appellant] was charged with possession of drug paraphernalia under 35 P.S. § 780-113(a)(32)[, detailed *supra*]…. The fifty plastic baggies and digital scale found in the truck, coupled with the large quantity of cocaine, were sufficient evidence to support the charge of possession of drug paraphernalia.

- 12 -

Trial Court Opinion, 6/9/23, at 7-9 (emphasis added; citations modified; paragraph numbering omitted). Our review discloses that the trial court's foregoing reasoning is supported by the record and the law. **See id.**

From the totality of the circumstances described above, we conclude the evidence was sufficient to establish that Appellant constructively possessed the contraband, and the Commonwealth proved all elements of the possessory offenses. **See**, **e.g.**, **Jones**, 874 A.2d at 122 (upholding the defendant's conviction of PWID against sufficiency challenge and holding Commonwealth proved constructive possession of narcotics, where (1) police conducted a traffic stop of the rental car driven by the defendant; (2) "police found [] cocaine in the cabin of the car, in plain view"; (3) the defendant "had $481.00 in small denominations [on his person], which is common for someone involved in a drug distribution scheme"; and (4) the Commonwealth "also presented evidence in the form of … expert testimony" from a police officer qualified in the field of narcotics distribution "to establish that the drugs found in the rental car were intended for distribution.").[7] Moreover, Appellant's flight

---

[7] The primary authority upon which Appellant relies, **In the Interest of J.B.**, 189 A.3d 390 (Pa. 2018), is inapposite and unavailing. **See** Appellant's Brief at 16-18. In **J.B.**, the juvenile court adjudicated the defendant delinquent of first-degree murder and homicide of an unborn child, in connection with the shooting death of the defendant's stepmother inside the family's home. **J.B.**, 189 A.3d at 393. The defendant appealed, claiming, *inter alia*, the evidence was insufficient to support his adjudication of delinquency. **Id.** at 405, 407. This Court affirmed the juvenile court. **Id.** at 407. Our Supreme Court reversed, holding "the Commonwealth's forensic and eyewitness testimony,
*(Footnote Continued Next Page)*

from police, and refusal to comply with their attempts to stop his vehicle, provided additional circumstantial evidence of his consciousness of guilt. **See Commonwealth v. Perez**, 220 A.3d 1069, 1078 (Pa. Super. 2019) (*en banc*) (holding flight from police can constitute circumstantial evidence of consciousness of guilt). Finally, we reiterate that the trial court thoroughly instructed the jury on the elements of the possessory offenses, as well as the law governing possession. **See** N.T., 8/31/22, at 146-56. It is presumed the jury followed the court's instructions. **Commonwealth v. Speight**, 854 A.2d 450, 458 (Pa. 2004) ("It is presumed the jury follows [a trial] court's instructions.").

Based on the foregoing, we conclude the trial court did not abuse its discretion in denying Appellant's motion for judgment of acquittal.

Judgment of sentence affirmed.

---

and all reasonable inferences derived therefrom, viewed in a light most favorable to it, was, at best, in equipoise, as it was equally consistent with two possibilities…." **Id.** at 421; **see also id.** (detailing the "two possibilities" (which are not relevant to our disposition in the instant case)). The Supreme Court stated, "[w]hen a party on whom rests the burden of proof in either a criminal or a civil case, offers evidence consistent with two opposing propositions, he proves neither." **Id.** at 412 (citation omitted).

We conclude **J.B.** is completely irrelevant to the instant case. Here, the Commonwealth never presented the fact-finder "with two opposing propositions." Rather, as the Commonwealth correctly argues, it had "presented facts in furtherance of one theory, those being that Appellant possessed [contraband and] a large amount of cocaine for the purpose of delivering that narcotic to others." Commonwealth Brief at 11.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 02/21/2024